

Two Commerce Square, 2001 Market Street
Suite 1700
Philadelphia, PA 19103
☎ 215.299.2000 🖶 215.299.2150
www.foxrothschild.com

IAN COMISKY
Direct No: 215.299.2795
Email: icomisky@foxrothschild.com

June 4, 2025

**VIA ECF**

The Honorable Gerald A. McHugh
United States District Judge
Eastern District of Pennsylvania
601 Market Street
Philadelphia, PA 19106

**Re:**    ***United States v. Nicholas Lucidonio*, Criminal No. 20-211-2**

Dear Judge McHugh:

In our letter dated May 22, 2025 (ECF 139), we advised the Court that Nicholas Lucidonio was considering the filing of a petition for rehearing in the Third Circuit. We are now writing to inform the Court that Mr. Lucidonio has filed a petition for rehearing, which was docketed by the court of appeals on May 30, 2025. A copy of Mr. Lucidonio's petition for rehearing is enclosed.

Respectfully submitted,

Ian M. Comisky

Enclosure

cc:    John N. Kane (w/encl.)
       Matthew D. Lee

A Pennsylvania Limited Liability Partnership

California    Colorado    Delaware    District of Columbia    Florida    Georgia    Illinois    Massachusetts    Minnesota    Missouri
Nevada    New Jersey    New York    North Carolina    Oklahoma    Pennsylvania    South Carolina    Texas    Washington

## UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

Case No. 24-1285

NICHOLAS LUCIDONIO
                              Appellant,

v.

UNITED STATES OF AMERICA
                              Appellee.

*Appeal from Judgment Entered in the United States*
*District Court for the District of Eastern Pennsylvania*

PETITION FOR PANEL REHEARING

Ian M. Comisky
Matthew D. Lee
icomisky@FoxRothschild.com
mlee@FoxRothschild.com
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3222
Telephone: 215.299.2000
Facsimile:  215.299.2150

Matthew Nis Leerberg
mleerberg@foxrothschild.com
FOX ROTHSCHILD LLP
301 Hillsborough Street, Suite 1120
Raleigh, NC 27603
Telephone:  919.755.8700
Facsimile:  919.755.8800

*Attorneys for Appellant Nicholas
Lucidonio*

## INTRODUCTION

In its panel opinion in this case, this Court held that the government failed to prove that "[Mr.] Lucidonio encouraged anyone 'other than or in addition to co-conspirators.'" *United States v. Lucidonio*, 2025 WL 1420221, at *1 (May 16, 2025). This Court thus held that the district court committed error in applying an advisory Guideline adjustment, U.S.S.G. § 2T1.9(b)(2), vacated the sentence and remanded. *Id.* That ruling was correct and should benefit Mr. Lucidonio on remand for his de novo resentencing. *See* Exhibit A, Precedential Opinion and Judgment.

The panel declined to reach one additional issue, however, reasoning that its ruling obviated the need to do so. Yet, that issue is critical to Mr. Lucodonio in his resentencing, and is critical to the jurisprudence of this circuit.

During the course of this appeal, this Court requested supplemental briefing on the impact of *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) on the Guidelines, before concluding that it need not address these arguments since the Section 2T1.9(b)(2) enhancement did not apply. *Lucidonio*, 2025 WL 1420221, at *3 n.7. Mr. Lucidonio respectfully requests this Court reconsider and engage with that question now, for the reasons outlined herein.

## ARGUMENT

*Loper Bright* clarified the deference owed to agency interpretations of statutes. In particular, it is "instructive as [courts] assess the assertion that the

[Sentencing] Commission's view of a statute should trump our own." *United States v. Rutherford*, 120 F.4th 360, 379 (3d Cir. 2024). Thus, *Loper Bright* is relevant here for two reasons: one, for the general question of deference to the Sentencing Guidelines as a whole, and two, for whether any deference is owed to U.S.S.G. § 2T1.9 given its lack of notice and comment, and thus, if it may be applied in this case. Mr. Lucidonio requests that this Court consider the implications for both.

First, this Court should decide what level of deference is owed to the Sentencing Guidelines as a whole. The starting place for that analysis is now settled: it "remains the responsibility of the court to decide whether the law means what the agency says." *Loper Bright*, 603 U.S. at 392 (quoting *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 109 (2015) (Scalia, J., concurring in judgment)). And so, here, it remains the duty of this Court to determine whether the Sentencing Guidelines, as promulgated by the Sentencing Commission, are a proper agency interpretation of 28 U.S.C. §§ 991, 994, and 18 U.S.C. § 3553(a)(2)—the statutes that they are meant to interpret.

Of course, the Guidelines are no mere interpretation of the statute. They also represent the Sentencing Commission's attempt to exercise a delegation of authority from Congress to develop them. But *Loper Bright* imposes important limits even in that context. Courts must "effectuate the will of Congress subject to constitutional limits" by "recognizing constitutional delegations, 'fixing the boundaries of the

delegated authority' [] and ensuring the agency has engaged in 'reasoned decisionmaking' within those boundaries." *Loper Bright*, 604 U.S. at 395 (citations omitted). Thus, before any deference to agency rules is due, the courts must first ensure that the Commission properly exercised its delegated authority.

The Sentencing Guidelines (and policy statements) are intended to meet three goals:

(1)  be in accordance with the purposes of sentencing,

(2)  "provide certainty and fairness," by "avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted," and

(3)  "reflect, to the extent practicable, advancement in knowledge of human behavior as it relates to the criminal justice process."

*Rutherford*, 120 F.4th at 363 (quoting 28 U.S.C. § 991(b)(1)). And "although 'Congress has delegated to the Commission significant discretion[,]' 'it must bow to the specific directives of Congress' and accurately reflect Congressional intent when it fulfills its responsibilities." *Id.* at 375–76 (quoting *United States v. LaBonte*, 520 U.S. 751, 757 (1997)).

The Commission has continued to encounter difficulties in achieving its goals. Mr. Lucidonio cited to numerous instances of disparate interpretation and application of the Guidelines—both internally within this circuit and across the country. *See* ECF No. 45, Reply Brief at 22-25 (discussing intended loss; inchoate

offenses as controlled substance offenses under Section 4B1.2(b); and the variance at which district courts within this circuit issue "within Guidelines" sentences). Thus, the Guidelines themselves are an improper extension of the Commission's delegation of authority because they fail to properly achieve their statutory purpose and goal of standardized sentencing.  And this case, with these issues already briefed, is an ideal vehicle for this Court to so hold.

This case presents a second critical question facing the Guidelines under current law—the proper remedy when the Sentencing Commission skips the required notice-and-comment process.   After all, Congress only entrusted the Sentencing Commission to develop the guidelines *subject to* notice-and-comment procedures.  *Stinson v. United States*, 508 U.S. 36, 44-45 (1993).  As it turns out, the Sentencing Commission failed to abide by those procedures in promulgating U.S.S.G. § 2T1.9.

The Guidelines are considered legislative rules—those agency rules promulgated through formal or informal rulemaking.  *See United States v. Adair*, 38 F.4th 341, 347 n.1 (3d Cir. 2022); *see also Stinson*, 508 U.S. at 45 ("The Sentencing Commission promulgates the guidelines . . . through the informal rulemaking procedures in 5 U.S.C. § 553").  Thus, the Guidelines are subject to some aspects of the Administrative Procedure Act, including notice-and-comment.  *See* 28 U.S.C. § 994(x) (explaining that the provisions of 5 U.S.C. § 553 related to publication in the

Federal Register and the public hearing procedure apply to the promulgation of Guidelines).

Here, there was no notice and comment for Guideline Section 2T1.9.  It was not contained within the preliminary draft sent for notice and comment on October 1, 1986. 51 Fed. Reg. 35080.  Nor was it contained within an amended set of Guidelines circulated for public comment in February 1987.  52 Fed. Reg. 3920.  It was not until the Guidelines were sent to Congress that Section 2T1.9 appeared in the Guidelines for the first time—long after notice-and-comment had concluded. *See* 52 Fed. Reg. 18046.

The Sentencing Commission thus promulgated U.S.S.G. § 2T1.9 without employing notice-and-comment procedures as required under 28 U.S.C. § 994(x).  Without notice and comment, there cannot be the "exchange of views, information, and criticism between interested persons and the agency." *United States v. Reynolds*, 710 F.3d 498, 518-20 (3d Cir. 2013) (internal quotation marks omitted).  The Commission knows how important that step is.  *See* 52 Fed. Reg. at 3920 (the Commission noting in the Federal Register February 1987 publication that the Guidelines "reflect[ed] careful consideration by the Commission of the public comments received on the preliminary draft[.]").  Whether it was an oversight or deliberate choice, the Commission skipped that step here.  That went beyond the Commission's delegated authority because Section 2T1.9 is not the product of

"reasoned decisionmaking."    That, in turn, requires that this Court afford no deference to *this* Guideline.  *See Loper Bright*, 603 U.S. at 371.  It should not be applied in Mr. Lucidonio's case, nor any other case charged under 18 U.S.C. § 371.

Under either analysis, the outcome to Mr. Lucidonio matters. Although this Court limited the application of U.S.S.G. § 2T1.9 to Mr. Lucidonio, it did not hold that it is altogether inapplicable.    Thus, without any other adjustments, Mr. Lucidonio's advisory guideline range on remand would be 18-24 months, down from 24-30 months.   That range is still within Zone D, requiring incarceration absent downward variance by the district court.

However, without deference to the Guidelines as a whole, or without deference to the Section 2T1.9 Guideline in particular, Mr. Lucidonio believes he would face a sentence not tethered to tax loss, likely reducing Mr. Lucidonio's range of sentences substantially.   That alone has a significant impact on the sentence he faces—as well as all others facing similar prosecutions.

Unsurprisingly, Mr. Lucidonio did not raise these issues in the district court, because *Loper Bright* and *Corner Post* had not yet been decided at that time.  In fact, those cases were not decided until June 2024—well after Mr. Lucidonio's sentencing and even after he filed his opening brief in this appeal.  That is no bar here, though. The viability of the Guidelines, and Section 2T1.9 in particular, is "critical when reviewed on appeal" and thus this court can resolve it, "rather than remand to the

district court." *Rutherford*, 120 F.4th at 373 (quoting *Hudson United Bank v. LiTenda Mortg. Corp.*, 142 F.3d 151, 159 (3d Cir. 1998) (internal quotation marks omitted)).

Resolution of an issue on appeal is appropriate when it "will best serve the interests of judicial efficiency on remand"—and the "issue's resolution is of public importance." *Id.* (quoting *Kedra v. Schroeter*, 876 F.3d 424, 436 n.5 (3d Cir. 2017) and *Lortengeli v. Critelli*, 853 F.2d 186, 189 n.5 (3d Cir. 1988)). And here, this case raises just that type of issue.

## CONCLUSION

Mr. Lucidonio is appreciative of this Court's thoughtful analysis of U.S.S.G. § 2T1.9(b)(2) as it applies to the facts of his case. But there remains an important question in this case, the impact of *Loper Bright* on the U.S. Sentencing Guidelines—particularly Section 2T1.9. This Court should step through the open door now and consider this significant question.

/s/ Ian M. Comisky
Ian M. Comisky
Matthew D. Lee
FOX ROTHSCHILD LLP
2000 Market Street
20th Floor
Philadelphia, PA 19103-3222
Tel: 215.299.2000
Fax: 215.299.2150
icomisky@FoxRothschild.com
mlee@FoxRothschild.com

Dated: May 30, 2025

Matthew Nis Leerberg
FOX ROTHSCHILD LLP
301 Hillsborough Street, Suite 1120
Raleigh, NC 27603
Tel:  919.755.8700
Fax:  919.755.8800
mleerberg@FoxRothschild.com

*Attorneys for Appellant Nicholas Lucidonio*

## <u>REQUIRED CERTIFICATIONS</u>

A. Type-Volume. Pursuant to Rule 32(a)(7)(B)(i) and (ii) of the Federal Rules of Appellate Procedure, I certify that, according to the word-counting function of my word processing system (Word for Office 365), this Petition for Rehearing contains 1,543 words, including footnotes, and employs 14-Point Times New Roman font.

B. Bar Membership. Pursuant to Rules 28.3(d) & 46.1(e) of the Local Appellate Rules, I certify that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

C. Electronic Filing. Pursuant to Rule 31.1(c) of the Local Appellate Rules, I certify that the text of the electronically filed Brief is identical to the text in the paper copies of this Brief as filed with the Clerk. The electronic (PDF) version of this Brief has been checked for viruses using CrowdStrike Falcon Version 7.04.17605.0, and no virus was detected.

/s/ Ian M. Comisky

Dated: May 30, 2025

# **CERTIFICATE OF SERVICE**

I certify that, on this date, I served a true and correct copy of the foregoing brief and accompanying document via this Court's CM/ECF system upon all parties of record.

/s/ Ian M. Comisky

Dated: May 30, 2025

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1285
_____

UNITED STATES OF AMERICA

v.

NICHOLAS LUCIDONIO
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2:20-cr-00211-002)
District Judge:  Honorable Gerald A. McHugh
_____

Argued: November 12, 2024

Before: RESTREPO, MONTGOMERY-REEVES, and
AMBRO, *Circuit Judges*.

(Opinion filed: May 16, 2025)

Ian M. Comisky        **[ARGUED]**
Matthew D. Lee
Fox Rothschild
Two Commerce Square
2001 Market Street, Suite 1700
Philadelphia, PA 19103

Matthew N. Leerberg
Fox Rothschild
301 Hillsborough Street
Suite 1120
Raleigh, NC 27603

*Counsel for Appellant Nicholas Lucidonio*

Katie Bagley
David A. Hubbert
Gregory S. Knapp   **[ARGUED]**
Samuel R. Lyons
Joseph B. Syverson
United States Department of Justice
P.O. Box 972
Ben Franklin Station
Washington, DC 20004

*Counsel for Appellee United States of America*

---

OPINION OF THE COURT

---

MONTGOMERY-REEVES, *Circuit Judge.*

This case involves a conspiracy to defraud the Internal Revenue Service (the "IRS") under 18 U.S.C. § 371 (*Klein* conspiracy). The *Klein* conspiracy resulted from a payroll tax fraud scheme at a cheesesteak restaurant named Tony Luke's. Nicholas Lucidonio, an owner of Tony Luke's, avoided employment taxes by causing Tony Luke's to issue paychecks to employees for an amount of "on-the-books" wages, requiring the employees to sign back their paychecks, and giving the employees an amount in cash that reflected both "on-the-books" and "off-the-books" wages. Lucidonio then caused Tony Luke's to file false employer tax returns to the IRS that underreported the full amount of wages paid to employees and underpaid employment taxes owed by Tony Luke's and the employees. The employees, who learned about the scheme during onboarding, received Form W-2s from Tony Luke's listing only "on-the-books" wages for the year's income. As a result, employees underreported income on their personal income tax returns. The conspiracy "spanned ten years[,] . . . involved systemic underreporting of wages" by "an average of 30 to 40 employees" at any given time, and benefitted from "the destruction of most original records and the maintenance of false ledgers." App. 17.

Lucidonio admitted to his involvement in this scheme and pleaded guilty to one count of *Klein* conspiracy. So he does not appeal his conviction. Instead, he challenges his sentence. In particular, Lucidonio challenges the application of a United States Sentencing Guideline that increased, or "enhanced," his total offense level by two points. The enhancement applies when "conduct was intended to encourage persons other than or in addition to co-conspirators to violate the internal revenue laws or impede, impair, obstruct, or defeat the ascertainment, computation, assessment, or collection of revenue[.]" U.S. Sent'g Guidelines Manual § 2T1.9(b)(2) (U.S. Sent'g Comm'n 2023).[1]

Lucidonio argues that the District Court erred by applying the enhancement for two reasons. First, he contends that the phrase "conduct was intended to encourage" requires explicitly directing another to violate the IRS Code or otherwise impede the IRS's collection of revenue. According to Lucidonio, no such conduct exists here. Second, Lucidonio asserts that, even if his conduct were intended to encourage individuals to violate the IRS Code or otherwise impede the IRS's collection of revenue, he did not encourage anyone "other than or in addition to co-conspirators" because Tony Luke's employees were aware of and participated in the scheme.

We disagree with Lucidonio that the enhancement is limited to those who explicitly direct another to violate the IRS Code or otherwise impede the IRS's collection of revenue. Section 2T1.9(b)(2) unambiguously refutes his interpretation, so the alleged absence of such conduct does not preclude application of the enhancement. But the Government failed to show by a preponderance of the evidence that Lucidonio encouraged anyone "other than or in addition to co-conspirators." *See United States v. Diallo*, 710 F.3d 147, 151 (3d Cir. 2013) ("[T]he [G]overnment always bears the burden of proving by a preponderance of the evidence that the facts

---

[1] We refer to "internal revenue laws" for clarity as the "IRS Code." And we refer to "or impede, impair, obstruct, or defeat the ascertainment, computation, assessment, or collection of revenue" as "or otherwise impede the IRS's collection of revenue."

support a sentencing enhancement, and 'the defendant does not have to prove the negative to avoid the enhanced sentence.'" (quoting *United States v. Evans*, 155 F.3d 245, 253 (3d Cir. 1998)).   Thus, we will vacate and remand for resentencing.[2]

## I.   BACKGROUND[3]

Lucidonio and his father Anthony Lucidonio, Sr.[4] own Tony Luke's, a Philadelphia-based cheesesteak restaurant.[5]  In this role, Lucidonio—alongside Anthony Sr.—ran Tony Luke's day-to-day operations by supervising and training employees, managing financial aspects of the business, and assisting with food preparation.  But they also engaged in a payroll tax fraud scheme at the restaurant.

Lucidonio and Anthony Sr. paid wages to Tony Luke's employees partially "on-the-books" and partially "off-the-books" to avoid the payment of employment taxes.  Lucidonio and Anthony Sr. did so by issuing employees a paycheck for some portion of their wages, requiring the employees to sign back the paycheck to Tony Luke's, and giving the employees cash that comprised the amount listed on the paycheck and an amount that went unreported.    Lucidonio also directed managers to explain to employees during onboarding that the payment scheme allowed them to earn more money by avoiding tax.  The tax fraud scheme was common knowledge among employees.  For example, one employee asked for

---

[2]  Nothing in this opinion suggests the guilt or innocence of the Tony Luke's employees; the issue here is simply about whether the Government has met its burden to prove facts necessary to support a sentencing enhancement.

[3]   We take the Government's factual assertions as true for purposes of this appeal.

[4]  We refer to Nicholas Lucidonio as "Lucidonio" and Anthony Lucidonio, Sr. as "Anthony Sr." for clarity purposes only.

[5]  "Tony Luke's," now named "Tony and Nick's Steaks," refers to a cheesesteak restaurant located at 39 East Oregon Avenue in South Philadelphia.

specific amounts of "on-the-books" wages to ensure eligibility for state-assisted medical coverage.  Moreover, because Tony Luke's only reported "on-the-books" income to the IRS, employees then filed false personal income tax returns after receiving false IRS Form W-2s from Tony Luke's.

A grand jury indicted Lucidonio for various tax-based crimes; Lucidonio pleaded guilty to a single count of *Klein* conspiracy under 18 U.S.C. § 371;[6] and the remaining counts were dismissed.  Lucidonio objected to the application of Section 2T1.9(b)(2), but the District Court overruled his objection.

Before sentencing, a United States Probation Officer prepared a Presentence Investigation Report ("PSR").  Adjusting Lucidonio's base offense level upward by two levels under Section 2T1.9(b)(2), the PSR calculated a total offense level of 17.  With a criminal history category of I, the PSR calculated an applicable Guidelines range of 24 to 30 months.  The District Court sentenced Lucidonio to 20 months' imprisonment.  He timely appealed.

## II.   JURISDICTION AND STANDARDS OF REVIEW

The District Court had jurisdiction over this case under 18 U.S.C. § 3231.  We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

We exercise plenary review over the interpretation of the Guidelines.  *United States v. Nasir*, 17 F.4th 459, 468 (3d Cir. 2021) (en banc) (citing *United States v. Wilson*, 880 F.3d 80, 83 (3d Cir. 2018)).  Our "standard of review for the District Court's application of the Guidelines to the facts 'depends on the nature of the question presented.'"  *United States v. Caraballo*, 88 F.4th 239, 243 (3d Cir. 2023) (quoting *Buford v.*

---

[6]  18 U.S.C. § 371 applies to, in part, a conspiracy "to defraud the United States, or any agency thereof . . . ."  The offense known as *Klein* conspiracy simply refers to a conspiracy to defraud the IRS.  *See United States v. McKee*, 506 F.3d 225, 238 n.10 (3d Cir. 2007) (explaining how *United States v. Klein*, 257 F.2d 908 (2d Cir. 1957), became an eponym for this strain of conspiracy against the IRS).

*United States*, 532 U.S. 59, 63 (2001)).  This appeal "presents a mixed question of law and fact, [so] 'our standard of review takes on greater scrutiny, approaching *de novo* as the issue moves from one of strictly fact to one of strictly law.'"  *United States v. Miller*, 527 F.3d 54, 60 (3d Cir. 2008) (quoting *United States v. Felton*, 55 F.3d 861, 864 (3d Cir. 1995)).

## III.    DISCUSSION

Lucidonio's appeal turns on Section 2T1.9(b)(2).  As noted above, this Guideline provides that "[i]f the conduct was intended to encourage persons other than or in addition to co-conspirators to violate the internal revenue laws or impede, impair, obstruct, or defeat the ascertainment, computation, assessment, or collection of revenue, increase by 2 levels."  U.S. Sent'g Guidelines Manual § 2T1.9(b)(2) (U.S. Sent'g Comm'n 2023).

Lucidonio argues that the District Court improperly applied Section 2T1.9(b)(2) for two reasons.  First, he argues that the phrase "conduct was intended to encourage" requires explicitly directing another to violate the IRS Code or otherwise impede the IRS's collection of revenue, which purportedly did not happen here.  Second, he argues that he did not encourage anyone "other than or in addition to co-conspirators" because his employees were part of the tax scheme.  We take the arguments in turn.[7]

### A.    "Conduct Was Intended to Encourage"

In Lucidonio's view, the phrase "conduct was intended to encourage" applies only when a defendant explicitly directs someone to violate the IRS Code or otherwise impede the IRS's collection of revenue.  In other words, Lucidonio believes that the enhancement would apply only if he told "an

---

[7]  Because we vacate the application of the enhancement and remand for resentencing without it, we need not address Lucidonio's arguments about the legality of the Guidelines in general or this enhancement in particular under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and the Administrative Procedure Act.

employee, you're getting cash; *don't report your taxes*." Oral Arg. Tr. 15:13–15:14 (emphasis added). And under this interpretation, Lucidonio contends that the enhancement cannot apply because no such evidence exists.

In *Nasir*, this Court explained that when interpreting a Guideline, courts must first exhaust traditional tools of construction. 17 F.4th at 471. This requires considering the "text, structure, history, and purpose" of the Guideline. *Id.* (quoting *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019)). And "if the Guideline itself is unambiguous, our inquiry is at an end." *United States v. Mercado*, 81 F.4th 352, 356 (3d Cir. 2023); *see, e.g.*, *Nasir*, 17 F.4th at 472 (holding, based on unambiguous text, that Section 4B1.2(b) excluded "inchoate crimes" from "the definition of 'controlled substance offenses'").

This issue begins and ends at the text. Like any question of statutory interpretation, we "presume that words carry their ordinary meaning[,]" and we often look "to standard reference works such as legal and general dictionaries" to determine ordinary meaning. *Caraballo*, 88 F.4th at 246 (cleaned up).[8] Such standard reference works include but are not limited to *Black's Law Dictionary*, *Oxford English Dictionary*, and *Webster's Dictionary*. *See id.* (collecting cases). We also are mindful that "[t]here is no canon against using common sense in construing laws as saying what they obviously mean." *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 63 (2004) (quoting *Roschen v. Ward*, 279 U.S. 337, 339 (1929)). No application of these principles to the phrase "conduct was intended to encourage" supports Lucidonio's argument.

Lucidonio focuses on the terms "intended" and "encourage."[9] "Intend" means "[t]o design, resolve, propose[;

---

[8]   Because Section 2T1.9 became effective in 1987 (with amendments in 1989 and 1993), we look to contemporaneous dictionary definitions. *United States v. Mercado*, 81 F.4th 352, 356 n.3 (3d Cir. 2023).

[9]   We note for completeness how the meaning of "conduct" affects the enhancement. The noun "conduct" refers to, among other things, "[p]ersonal behavior; deportment; mode of

t]o plan for and expect a certain result." *Intend*, Black's Law Dictionary (6th ed. 1990); *see also Intend*, Merriam-Webster's Ninth New Collegiate Dictionary (1988) ("to have in mind as a purpose or goal"; "to direct the mind on"); *Intend*, Oxford English Dictionary (2d ed. 1989) ("[t]o apply oneself *to do* something; to endeavor, to strive"). And "encourage" means to "instigate," "incite to action," "give courage to," "inspirit," "embolden," "raise confidence," "make confident," "help," "forward," and "advise." *Encourage*, Black's Law Dictionary (6th ed. 1990); *see also Encourage*, Merriam-Webster's Ninth New Collegiate Dictionary (1988) ("to inspire with courage, spirit, or hope"; "to spur on"; "to give help or patronage to"); *Encourage*, Oxford English Dictionary (2d ed. 1989) ("to inspire with courage sufficient for any undertaking; to embolden, make confident").

None shows why intending to encourage is limited to explicitly directing another to act a certain way. A person can "instigate" or "incite" another to act, with the expectation of a certain result, without explicit direction. The District Court explained how that principle applies here: "creating and administering a cash payroll system that withholds less than federal law and requires and issues fraudulent W-2 forms to employees" was conduct "'intended to encourage' those employees to violate tax laws." App. 16. This conclusion is "self-evident" because "the scheme *depends* on it, as honest treatment of tax obligations would rapidly expose the fraud." *Id.* So the enhancement's unambiguous text does not include any requirement that a defendant's conduct explicitly direct another to violate the IRS Code or otherwise impede the IRS's collection of revenue.[10]

---

action; any positive or negative act." *Conduct*, Black's Law Dictionary (6th ed. 1990); *see also Conduct*, Merriam-Webster's Ninth New Collegiate Dictionary (1988) ("the act, manner, or process of carrying on"); *Conduct*, Oxford English Dictionary (2d ed. 1989) ("[a] piece of behaviour"; "a course of conduct"; "[t]he action or manner of conducting, directing, managing, or carrying on"). These definitions show how "conduct"—that is, any positive or negative act—can comprise more than explicitly directing another to act.

[10]   Section 2T1.9(b)(2)'s structure, purpose, and history confirm this conclusion. First, the structure of the enhancement—comprised of four types of conduct (impeding,

Despite the plain language of the text, Lucidonio argues that we should exercise interpretive restraint and construe the enhancement in his favor. According to him, *Dubin v. United States*, 599 U.S. 110 (2023), and *Marinello v. United States*, 584 U.S. 1 (2018), show that the Sentencing Commission "cannot" have "intended a two-level enhancement to apply in every run-of-the-mill tax fraud case simply because a defendant's conduct may have contributed in some way to someone else's violation." Opening Br. 16.[11] But this is no run-of-the-mill tax fraud case involving a remote connection with someone else's violation. So we disagree that *Dubin* and *Marinello* demand interpretive restraint here.

In *Marinello*, the Supreme Court held that 26 U.S.C. § 7212(a), which makes "it a felony 'corruptly or by force' to 'endeavo[r] to obstruct or imped[e] the due administration'" of the IRS Code, "does not cover routine administrative procedures that are near-universally applied to all taxpayers, such as the ordinary processing of income tax returns." 584

---

impairing, obstructing, or defeating) aimed at four distinct government acts (ascertainment, computation, assessment, or collection)—captures a wide range of behavior. Second, the purpose of the enhancement relates to how *Klein* conspiracies are typically "complex" and "subvert the revenue system." U.S. Sent'g Guidelines Manual § 2T1.9 cmt. background (U.S. Sent'g Comm'n 2023); *see also Caraballo*, 88 F.4th at 247 n.5 ("We can consider the background commentary from the Guidelines without going through the *Kisor* process." (citing *Adair*, 38 F.4th at 347–48)). Third, the Sentencing Commission expanded the enhancement in 1993 to include the four other types of conduct and government harm discussed above. *Amendments to the Sentencing Guidelines for United States Courts*, 58 Fed. Reg. 27148, 27159 (May 6, 1993). All three confirm our reading of the text; nothing about Section 2T1.9(b)(2) supports reading a hidden limitation into an otherwise encompassing enhancement.

[11] Lucidonio also mentions the rule of lenity, but for the reasons above, the Guideline is not ambiguous, and thus the rule of lenity has no application. *Nasir*, 17 F.4th at 474 (Bibas, J., concurring) ("[W]e should use lenity to interpret ambiguous Guidelines.").

U.S. at 4 (alterations in original) (quoting 26 U.S.C. § 7212(a)). As relevant here, the Supreme Court noted that a broad interpretation of the crime could apply it to a person who, for example, "pays a babysitter $41 per week in cash without withholding taxes." *Id.* at 10. The Supreme Court "sincerely doubt[ed]" that Congress "intended that outcome" and used that example to support its more limited reading of the statute. *Id.*

*Dubin* focused on similar interpretive concerns. There, the Supreme Court interpreted the scope of 18 U.S.C. § 1028A(a)(1)—which prohibits aggravated identity theft—as applied to a Medicaid-overbilling scheme. The Supreme Court rejected the notion that Medicaid overbilling, on the facts in *Dubin*, supported an aggravated identity theft conviction when "the defendant's misuse of another person's means of identification" was "merely an ancillary feature of the billing method." 599 U.S. at 114. In so holding, the Supreme Court noted how the opposite view would cover anyone "who fraudulently inflate[s] the price of a service or good" such as "[a] lawyer who rounds up her hours from 2.9 to 3." *Id.* Thus, after analyzing the statute "from text to context, from content to common sense," the Supreme Court concluded that "§ 1028A(a)(1) is not amenable to the Government's attempt to push the statutory envelope." *Id.* at 131.

But nothing about the enhancement's application to a payroll tax fraud scheme like Lucidonio's requires us to push the envelope or "read[] incongruous breadth into opaque language." *Id.* at 130. Lucidonio pleaded guilty to *Klein* conspiracy, and the applicable enhancement for *Klein* conspiracy at issue rests on facts inapposite to those discussed in *Marinello* and *Dubin*: Lucidonio was part of a conspiracy to avoid the payment of taxes that spanned a decade, involved dozens of employees, and remained hidden by Lucidonio destroying accurate business records and recording false information. So while there may be a case that calls for exercising interpretive restraint in applying the Guidelines, this is not that case; instead, it falls squarely within what a reasonable person would consider "conduct . . . intended to encourage" another to violate the IRS Code or otherwise impede the IRS's collection of revenue.

With a proper understanding in mind of "conduct was intended to encourage," we summarily reject Lucidonio's argument that the District Court clearly erred by applying this aspect of the enhancement. *See United States v. Ashe*, 130 F.4th 50, 54 (3d Cir. 2025) (explaining that clear error exists "when although there is evidence to support [a factual finding], the reviewing body . . . is left with the definite and firm conviction that a mistake has been committed" (quoting *United States v. Montalvo-Flores*, 81 F.4th 339, 342 (3d Cir. 2023)). Here, the District Court explained Lucidonio's administration of the payroll tax fraud scheme and production of fraudulent W-2 forms to employees was integral to the conspiracy; it found that Lucidonio depended on the employees to follow his lead because an honest treatment of tax reporting by the employees would unveil the scheme; and it supported its finding that Lucidonio expected his employees to abide by the scheme based on how long it went undetected.

### B.    "Persons Other than or in Addition to Co-Conspirators"

Next, we must determine whether Lucidonio's conduct was intended to encourage "persons other than or in addition to co-conspirators" to violate the IRS Code or otherwise impede the IRS's collection of revenue. U.S. Sent'g Guidelines Manual § 2T1.9(b)(2) (U.S. Sent'g Comm'n 2023).

A co-conspirator is "[o]ne who engages in an illegal confederacy with others." *Co-Conspirator*, Black's Law Dictionary (6th ed. 1990)). And the Guidelines confirm that "co-conspirators" in the enhancement must refer to "co-conspirators" to the charged *Klein* conspiracy.[12] All agree that

---

[12]    *See* U.S. Sent'g Guidelines Manual app. A (U.S. Sent'g Comm'n 2023) (identifying applicable Guidelines to substantive offenses). *Compare* U.S. Sent'g Guidelines Manual § 2A1.5 (U.S. Sent'g Comm'n 2023) (conspiracy or solicitation to commit murder), *and* U.S. Sent'g Guidelines Manual § 2C1.1 (U.S. Sent'g Comm'n 2023) (conspiracy to defraud by interference with governmental functions), *and* U.S. Sent'g Guidelines Manual § 2K2.1 (U.S. Sent'g Comm'n 2023) (conspiracy to violate 18 U.S.C. § 924(c)), *and* U.S. Sent'g Guidelines Manual § 2T1.9(b)(2) (U.S. Sent'g Comm'n

Lucidonio and Anthony, Sr. were co-conspirators in the charged *Klein* conspiracy. And all agree that the charged *Klein* conspiracy is that Lucidonio and Anthony Sr., "with others known and unknown to the Grand Jury," conspired to defraud the IRS by "paying employees in cash 'off the books' to evade payroll taxes." Supp. App. 47, 51. The only question here is whether the Government met its burden to prove by a preponderance of the evidence that Tony Luke's employees were not "co-conspirators" in the *Klein* conspiracy described by the indictment.

*Klein* conspiracy requires three elements: (1) "the existence of an agreement," *United States v. Gambone*, 314 F.3d 163, 176 (3d Cir. 2003) (citing *United States v. Rankin*, 870 F.2d 109, 113 (3d Cir. 1989)), "to impede the IRS" from "assessing and collecting federal income taxes," *United States v. Gricco*, 277 F.3d 339, 348 (3d Cir. 2002) (citations omitted), *overruled on other grounds as stated in United States v. Cesare*, 581 F.3d 206, 208 n.3 (3d Cir. 2009); (2) "an overt act by one of the conspirators in furtherance of the objective," *Gambone*, 314 F.3d at 176 (citing *Rankin*, 870 F.2d at 113); and (3) "an intent on the part of the conspirators to agree as well as to defraud the United States," *id.* (citing *Rankin*, 870 F.2d at 113), which requires showing that the alleged conspirators (a) "knew of the agreement" and (b) "intended both to join it and to accomplish its illegal objects," *United States v. McKee*, 506 F.3d 225, 241 (3d Cir. 2007).

No one disputes "the existence of an agreement" or "an overt act by one of the conspirators in furtherance of the objective." *Gambone*, 314 F.3d at 176. That is because Lucidonio and Anthony Sr. both pleaded guilty to *Klein* conspiracy arising from an agreement to defraud the IRS by avoiding the payment of payroll taxes. And in so doing, Lucidonio committed overt acts in furtherance of the conspiracy by, for example, causing the false filing of tax forms. *E.g.*, *McKee*, 506 F.3d at 243 ("[T]he Partnership's

---

2023) (conspiracy to impede, impair, obstruct, or defeat tax), *with* U.S. Sent'g Guidelines Manual § 2X1.1 (U.S. Sent'g Comm'n 2023) (attempt, solicitation, or conspiracy not covered by a specific offense Guideline).

failure to report income of its RIY member employees established the overt act . . . .").

Thus, the third element, "intent," which we sometimes call "participation," is the crux of this issue. In *McKee*, we explored this subject in the context of a multi-defendant *Klein* conspiracy centered on personal tax and employment tax fraud. 506 F.3d at 228. There, we explained that "intent may be inferred from conduct that furthered the purpose of the conspiracy." *Id.* at 241 (citing *Direct Sales Co. v. United States*, 319 U.S. 703, 711 (1943)). With that principle in mind, we held that defendants' signature on paychecks and "signature on the payroll records and tax returns" evinced the requisite intent. *Id.* Another defendant's intent "was less direct" because he did not carry out the "relevant tasks" of the conspiracy. *Id.* But we explained that while "a conspirator's stake in the venture is not an essential element of the crime of conspiracy, the existence of such a stake is relevant to the question of deliberate participation." *Id.* at 242. The defendant had "both a financial and a philosophical motive" to take part in the *Klein* conspiracy because—as someone who opposed the tax system—he could collect income while undermining the government. *Id.* Combined with evidence that "the fraudulent withholding was common knowledge amongst the . . . employees," which a reasonable jury could use to conclude that a partner both knew and participated in the scheme, we held that the evidence was sufficient to support a conviction for *Klein* conspiracy. *Id.*

Here, the Government argues that Tony Luke's employees had nothing to do with "the charged conspiracy to evade Tony Luke's tax obligations." Answering Br. 23. And the Government describes any involvement by Tony Luke's employees as "acquiescence" not "participation." Answering Br. 24. But the facts emphasized by the Government to show the applicability of the first part of the enhancement—that Lucidonio encouraged his employees to violate the IRS Code or otherwise impede the IRS's collection of revenue—rebut that conclusion.[13]

---

[13]   Blackletter tax law helps understand why the payroll tax fraud scheme involving Lucidonio's operation of Tony Luke's also involves employees. The indictment explains that Tony

According to the Government, Lucidonio encouraged "his employees to violate the law by explaining to employees

---

Luke's filed a false Form 941. Employers use the Form 941 to report, among other things, the wages paid to employees. Based on the wages paid to employees, employers must then calculate and pay their share of certain taxes borne jointly by employers and employees under the Federal Insurance Contributions Act ("FICA"). *See generally* 26 U.S.C. § 3101 *et seq.* FICA created "a tax on wages (up to an annual limit) that comprises a 12.4% Social Security tax and a 2.9% Medicare tax." *Glass Blocks Unlimited v. Commissioner*, T.C. Memo. 2013-180, 2013 WL 4016519, at *2 (T.C. Aug. 7, 2013). Unlike many taxes, FICA splits payment between employer and employee; both employer and employee each owe a 6.2% Social Security tax and 1.45% Medicare tax. *See* 26 U.S.C. § 3101(a), (b) (specifying employee's share); 26 U.S.C. § 3111(a), (b) (specifying employer's share). Employers must "withhold from wages the amount of the tax imposed on its employee, and the employer is liable for paying the tax it is required to so withhold." *Glass Blocks Unlimited*, 2013 WL 4016519, at *2 (citing 26 U.S.C. § 3102(a), (b)). By understating the amount of wages paid to employees, Tony Luke's and the employees avoided the payment of their respective shares of FICA taxes.

Also important is Lucidonio and Anthony Sr.'s relationship with Tony Luke's nonpayment of FICA taxes. Tony Luke's is a small business corporation under Subchapter S in the IRS Code. *Phillips v. Commissioner*, T.C. Memo 2017-61, 2017 WL 1324203, at *3 (T.C. Apr. 10, 2017). Corporations elect for tax treatment under Subchapter S because it allows "many small business owners to enjoy the limited liability of the corporate structure without, for the most part, being subject to taxation at the corporate level." *Pugh v. Commissioner*, 213 F.3d 1324, 1326 (11th Cir. 2000). That is because an S Corporation's income flows through to its shareholders, *see* 26 U.S.C. § 1366(a)(1) (explaining that an S Corporation's income is assigned by "pro rata share" to the corporation's shareholders). So Lucidonio and Anthony Sr. had personal interests in Tony Luke's payroll tax fraud conspiracy because when Tony Luke's saved money, Lucidonio and Anthony Sr. did too.

14

how the cash payroll scheme would help them evade taxes." Answering Br. 9; *see also* Answering Br. 27 ("[Lucidonio] made it abundantly clear to employees that Tony Luke's was maintaining a second, fraudulent set of records for the purpose of underreporting wages to the IRS."). This repeated behavior "emboldened employees to underreport their wage income consistent with the business's fraudulent accounting." Answering Br. 27. For example, one employee made an "arrangement" with Lucidonio to cap "on-the-books" hours at 25 per week, as "any hours exceeding 25 would affect [the employee's] state-assisted medical coverage." Answering Br. 26. And as the Government describes, this was not a one-way street comprised of Lucidonio and Anthony Sr. singlehandedly engaging in the criminal-tax conspiracy; "the continued success of [Lucidonio's] payroll fraud depended on employees underreporting their income because 'honest treatment of tax obligations by employees would rapidly expose the fraud.'" Answering Br. 28 (quoting the District Court). Put another way, again by the Government, Lucidonio "intended both to evade his business's payroll taxes and to encourage employees to evade their own taxes, as each of those frauds facilitated the other." Answering Br. 28.

The Government paints a picture of this case that is incompatible with holding that it proved by a preponderance of the evidence that the employees did not know of Lucidonio and Anthony Sr.'s *Klein* conspiracy and did not intend both to join it and accomplish its illegal objects. The employees (1) learned about the conspiracy during onboarding—in fact, it was common knowledge; (2) knew that the conspiracy would help them evade taxes; (3) understood that Lucidonio kept false sets of records; (4) signed back paychecks to Tony Luke's for on-the-books income in exchange for off-the-books cash; (5) filed false personal tax returns; (6) asked for certain off-the-books arrangements to remain qualified for state benefits; (7) helped facilitate the conspiracy by not honestly reporting their tax obligations to the IRS; and (8) like Lucidonio, evaded both income tax and employment tax as a result of the scheme. *See McKee*, 506 F.3d at 241–42.

The District Court mentioned this part of the enhancement only once, "reject[ing] the argument that [the employees'] 'acquiescence' render[ed] § 2T1.9(b)(2)

inapplicable[.]" App. 17. But even were this a factual finding that employees at Tony Luke's did not participate in the charged *Klein* conspiracy and we reviewed that determination for clear error, we would still vacate and remand. The Government's own assertions prove why it "failed to introduce any evidence" that Tony Luke's employees were not co-conspirators to the charged *Klein* conspiracy. *United States v. Belletiere*, 971 F.2d 961, 966 (3d Cir. 1992). And the District Court did not make any specific findings to support its conclusion that employees merely acquiesced. "[M]ore is required, even under the preponderance-of-the-evidence standard," for this enhancement to apply. *Ashe*, 130 F.4th at 56.

Thus, based on the Government's representations, we hold that it failed to show by a preponderance of the evidence that Lucidonio intended to encourage persons "other than or in addition to co-conspirators" to violate the IRS Code or otherwise impede the IRS's collection of revenue. U.S. Sent'g Guidelines Manual § 2T1.9(b)(2) (U.S. Sent'g Comm'n 2023). We will therefore vacate the judgment and remand for resentencing without the enhancement applied. *United States v. Raia*, 993 F.3d 185, 195 (3d Cir. 2021).

## IV.    CONCLUSION

For the reasons discussed above, we will vacate the sentence and remand this case to the District Court for resentencing without any enhancement under Section 2T1.9(b)(2).

16

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1285
_____

UNITED STATES OF AMERICA

v.

NICHOLAS LUCIDONIO

Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2:20-cr-00211-002)
District Judge: Honorable Gerald A. McHugh
_____

Argued: November 12, 2024

Before: RESTREPO, MONTOGMERY-REEVES, and
AMBRO, *Circuit Judges*.
_____

**JUDGMENT**
_____

This cause came to be considered on the record from the United States District

Court for the Eastern District of Pennsylvania and was argued on November 12, 2024.


On consideration whereof, it is now hereby **ORDERED** and **ADJUDGED** that

the judgment of the District Court entered on January 31, 2024 is hereby **VACATED**.

This case is **REMANDED** for resentencing without the application of United States

Sentencing Guideline § 2T1.9(b)(2).  Costs will not be taxed.  All of the above in

accordance with the Opinion of this Court.

                              ATTEST:

                              s/ Patricia S. Dodszuweit
                              Clerk

Dated: May 16, 2025

OFFICE OF THE CLERK

**PATRICIA S. DODSZUWEIT**

**CLERK**



### United States Court of Appeals

FOR THE THIRD CIRCUIT
21400 UNITED STATES COURTHOUSE
601 MARKET STREET
PHILADELPHIA, PA  19106-1790
Website: www.ca3.uscourts.gov

TELEPHONE

215-597-2995

May 16, 2025

Katie Bagley, Esq.
United States Department of Justice
Tax Division
P.O. Box 972
Washington, DC 20044

Ian M. Comisky, Esq
Fox Rothschild
Two Commerce Square
2001 Market Street, Suite 1700
Philadelphia, PA 19103

Gregory S. Knapp, Esq
United States Department of Justice
Tax Division
P.O. Box 972
Washington, DC 20044

Matthew D. Lee, Esq
Fox Rothschild
Two Commerce Square
2001 Market Street, Suite 1700
Philadelphia, PA 19103

Matthew N. Leerberg, Esq
Fox Rothschild
301 Hillsborough Street
Suite 1120
Raleigh, NC 27603

Samuel R. Lyons, Esq
United States Department of Justice
P.O. Box 972
Ben Franklin Station
Washington, DC 20004

Joseph B. Syverson, Esq.
United States Department of Justice
P.O. Box 972
Ben Franklin Station
Washington, DC 20004


RE: USA v. Nicholas Lucidonio
Case Number: 24-1285
District Court Case Number: 2:20-cr-00211-002

<u>ENTRY OF JUDGMENT</u>

Today, **May 16, 2025,** the Court entered its judgment in the above-captioned matter pursuant to Fed. R. App. P. 36.

If you wish to seek review of the Court's decision, you may file a petition for rehearing. The procedures for filing a petition for rehearing are set forth in Fed. R. App. P. 40, 3rd Cir. LAR 35 and 40, and summarized below.

<u>Time for Filing</u>:
14 days after entry of judgment.
45 days after entry of judgment in a civil case if the United States is a party.

<u>Form Limits</u>:
3900 words if produced by a computer, with a certificate of compliance pursuant to Fed. R. App. P. 32(g).
15 pages if hand or type written.

<u>Attachments</u>:
A copy of the panel's opinion and judgment only.
Certificate of service, unless the petition is filed and served through the Court's electronic-filing system.
Certificate of compliance if petition is produced by a computer.
No other attachments are permitted without first obtaining leave from the Court.

Unless the petition specifies that the petition seeks only panel rehearing, the petition will be construed as requesting both panel and en banc rehearing. A party seeking both forms of rehearing must file the petitions as a single document. Fed. R. App. P. 40(a).

A party who is entitled to costs pursuant to Fed.R.App.P. 39 must file an itemized and verified bill of costs within 14 days from the entry of judgment. The bill of costs must be submitted on the proper form which is available on the court's website.

A mandate will be issued at the appropriate time in accordance with the Fed. R. App. P. 41.

Please consult the Rules of the Supreme Court of the United States regarding the timing and requirements for filing a petition for writ of certiorari.

Very truly yours,
Patricia S. Dodszuweit, Clerk


By: s/James/amr
Case Manager
267-299-4958